Daniel W. GIBBS, an Infant, by William Gibbs and Patricia Gibbs, His Parents and Natural Guardians, Plaintiffs,

v.

UNITED STATES of America, Defendants.

No. 94–CV–0203.

United States District Court, N.D. New York.

May 15, 1995.

McPhillips, Fitzgerald Law Firm, Glens Falls, NY (Joseph R. Brennan, of counsel), for plaintiff.

U.S. Atty. Office, Albany, NY (James C. Woods, of counsel), for defendant U.S.

## MEMORANDUM DECISION AND ORDER

McAVOY, Chief Judge.

### I. Background:

This action seeking damages for personal injuries under the Federal Tort Claims Act, 28 U.S.C. 2671 *et seq.,* came before the Court for a bench trial on April 3, 1995. Plaintiff's cause of action stems from the October 27, 1990 collision which occurred at Ticonderoga, New York, between an automobile owned by the United States Postal Service and operated by Ken Olcott, an employee of same, and plaintiff Daniel W. Gibbs who was riding his bicycle. The Court now makes the following findings of fact and conclusions of law as a result of the evidence at trial.

### II. Findings of Fact:

1). On October 27, 1990, Ken Olcott was an employee of the United States Post Office and was stationed at the United States Post Office in Ticonderoga, New York. Mr. Olcott was driving a postal vehicle and delivering mail in Ticonderoga on that day.

2). Montcalm street in Ticonderoga is a two lane, east-west public street with one lane designated for travel in each direction. At approximately 11:00 a.m. Mr. Olcott was parked facing west on the north side of Montcalm street between Lake George Avenue to the west and Champlain Avenue to east.

3). On the south side of Montcalm, directly opposite Olcott's parking spot, was an alley between two buildings. The alley intersected the south side of Montcalm slightly

west of its center point between Lake George and Champlain Avenues. The alley afforded passage from Montcalm to Algonkin Street, the next street south.

4). At this time a large truck was parked on the south side of Montcalm just west of its junction with the alley, in an area designated for vehicle parking between the eastbound traffic lane of Montcalm and the sidewalk. The effect of the truck's positioning was such that the driver of a vehicle entering the alley could not see pedestrians on the southern sidewalk of Montcalm as they approached the alley from west to east. Nor could pedestrians travelling east on Montcalm toward the alley see any vehicle entering the alley from Montcalm until that vehicle had crossed the sidewalk in front of the parked truck.

5). Upon resuming his vehicle sometime before noon, Olcott made a left hand turn directly across both lanes of Montcalm seeking to pass through the alley from Montcalm to Algonkin to continue his mail route.

6). As Olcott entered the alley plaintiff Daniel W. Gibbs, then ten years old, was travelling on his bicycle on the southern sidewalk of Montcalm approaching the alley from east to west. By his own testimony Gibbs was "coasting," not pedalling his bicycle, intending to cross over the alley's opening and continue west. Plaintiff could not estimate how fast he was travelling as he approached the alley.

7). Olcott's vehicle which passed in front of the parked truck as it crossed the sidewalk to enter the alley suddenly appeared in front of plaintiff as he began to cross the alley. Plaintiff's bicycle collided with the right rear of Olcott's vehicle.

8). Plaintiff's testimony established that he tried to look around the truck but could not and that he never saw Olcott's vehicle prior to its appearance in front of him. Plaintiff also testified that he never considered getting off and walking the bicycle. Upon cross-examination plaintiff testified that as he approached the front of the truck and the alley opening he looked neither left nor right although he had seen vehicles in the alley before. Plaintiff further testified that he had no time to brake or change

direction when the postal vehicle appeared in front of him.

9). Olcott's testimony established that as he entered the alley his view of the sidewalk was blocked by the truck so that he could not see approaching pedestrians. Mr. Olcott allowed that by looking under the truck he could have seen pedestrians approaching the alley on the far side of the truck but he did not do so. Mr. Olcott also testified that from the point when he begun the left hand turn until his entry into the alley he never applied the brakes or removed his foot from the accelerator, but that his vehicle at all times was travelling slowly. He approximated his speed at no greater than three miles per hour. Mr. Olcott never looked to the right or sounded his horn as he crossed over the sidewalk towards the alley opening. Finally, Mr. Olcott testified that he never saw the plaintiff until after hearing the collision at the right rear of the postal vehicle.

10). Plaintiff testified that after the collision he was in severe pain from his chin and mouth. Plaintiff's teeth were loose in his mouth and he spat the pieces onto the ground. Plaintiff, assisted by Mr. Olcott, walked to a nearby store. Plaintiff's parents arrived shortly thereafter and he was removed to a local hospital where he received stitches in his chin. He later saw that his front top and bottom teeth were loose and broken. It was ultimately determined that five of plaintiff's teeth were fractured. Plaintiff testified to experiencing "lots" of pain in his face and mouth for weeks after the accident and could eat only liquids for the following month and a half. Dr. Brennan, whose deposition was introduced at trial, later performed root canals and capped plaintiff's teeth. Plaintiff testified that to this day he cannot eat solid foods such as apples or corn on the cob. The Court observed a sizable red scar on plaintiff's chin.

11). Plaintiff's mother testified, and plaintiff confirmed, that for a year afterward plaintiff's lip "drooped" which led to plaintiff's drooling and his inability to eat and drink properly. Plaintiff consulted a plastic surgeon, Dr. William C. Brender, who performed surgery to minimize the scarring and "untangle" a nerve which was disturbed by

the initial stitching of plaintiff's chin laceration. Brender's surgery was successful in repairing the nerve and removing the droop from plaintiff's lip although Brender's deposition indicates that plaintiff retains some palsy in his lip. Dr. Brender performed a second, dermabrasive procedure to minimize the scarring with plaintiff under general anesthesia. Dr. Brender also maintains an ongoing course of therapy in an attempt to minimize plaintiff's scarring. The therapy consists of injections of kenalog directly into the suture line on plaintiff's chin. Plaintiff has endured this treatment three times to date and at least one more is scheduled. Both plaintiff's mother and Dr. Brender's testimony indicates that this treatment is very painful. Finally, Dr. Brender's deposition indicates his belief that while plaintiff's scarring and palsy will continue to improve somewhat, they will never be entirely removed.

12). Plaintiff also currently wears braces and has received orthodontic treatment from Dr. David J. Angus, D.M.D., and continues to receive monthly orthodontic treatment from Dr. William J. Brennan. Plaintiff's mother testified that to her knowledge plaintiff had no problems with his teeth prior to the accident. Dr. Angus in his videotaped deposition gave the opinion that plaintiff was functioning fine without orthodontics prior to the accident in question. The Court has considered the government's objection to the hypothetical which preceded Dr. Angus' answer in this regard. The Court finds after review of the hypothetical and Angus' answer, however, that Angus did not rely on the proffered hypothetical but rather gave a well reasoned answer based on facts known to him, including that plaintiff had never been referred for orthodontics prior to the accident and his perception of the development and fit of plaintiff's posterior teeth, and assumptions based on those facts.

Dr. Angus in his deposition also opined, and the Court finds as a fact, that the orthodontic work plaintiff has received became a necessity in order to establish proper restorations to plaintiff's teeth as a result of the injuries plaintiff received in the collision. The Court is mindful of the opinion of Dr. John Essephian, which the government offers by way of a videotaped deposition, that the required orthodonty was not the result of the accident. The Court notes however that Essephian's answer was predicated on an assumed lack of mobility in plaintiff's teeth: Essephian indicated that he might give a different opinion if presented with evidence of mobility. In light of plaintiff's mother's testimony and Dr. Brennan's deposition testimony that plaintiff's teeth continue to display mobility the Court finds the evidence better supports plaintiff's view of the accident as an initiating cause of the need for orthodonty and therefore adopts it as a finding of fact.

13). Taking together the stipulations between the parties, the exhibits offered at trial and the deposition testimony of Drs. Brennan, Angus and Brender, the Court finds that the costs of plaintiff's medical care, including a reasonable prediction of future care which plaintiff can reasonably expect to require, are found to amount to $15,880.77.

## III. Conclusions of Law:

1). The Court concludes that the findings of fact made above, particularly those facts found in § 9 *supra*, establish that the United States, through its employee Kenneth Olcott, breached to plaintiff its duty to operate a motor vehicle with reasonable care under New York statutory and common law. *See Guzzardi v. Grotas*, 98 A.D.2d 761, 469 N.Y.S.2d 475 (2d Dep't 1983); New York Vehicle and Traffic Law § 1160, § 1151–a; *see also* § 1163(a) ("no person shall turn a vehicle to enter a private road or driveway ... unless and until such movement can be made with reasonable safety.")

2). The Court further concludes that the findings of fact made above, particularly those facts found in § 8 *supra*, establish that plaintiff also failed to act with all reasonable care and prudence dictated by the conditions at the accident scene. *See* New York Vehicle and Traffic Law § 1234(d); *Ortiz v. Kinoshita & Co.*, 30 A.D.2d 334, 292 N.Y.S.2d 48 (1st Dept.1968).

3). The Court further concludes that defendant United States' negligence was 80% responsible for proximately causing the collision in question. Therefore, the United

States is liable for 80% of the total of damages sustained by plaintiff as a result of the collision. It follows that the proportion of plaintiff's culpable conduct renders him 20% liable for proximately causing the collision and the damages to him which flowed therefrom. Therefore, the damages otherwise recoverable by plaintiff must be reduced by 20%. *See* N.Y.Civ.Prac.L. & R.S 1411 (McKinney's 1994); *Arbegast v. Board of Education,* 65 N.Y.2d 161, 490 N.Y.S.2d 751, 480 N.E.2d 365 (1985).

■ 4). The Court finds that in light of all the evidence, plaintiff has been damaged in the amount of $100,000, exclusive of the costs of his medical care. The Court's calculation constitutes a fair and just compensation for all the injuries, pain and suffering plaintiff has endured, which are the natural and proximate consequences of the collision described, as found above in findings of fact 10, 11 and 12. *See 26 NY Jur.2d, Damages §§ 56–66 (1984 & 1994 Supp.).* The Court has also taken into consideration the irreversible palsy now present in plaintiff's lip, as well as the permanent facial scar that this young man now bears. *See Irizarry v. Cardona,* 207 Misc. 536, 138 N.Y.S.2d 923 (Cty. Ct. Bronx County Ct.1954); *Spoth v. Clark,* 148 A.D.2d 953, 539 N.Y.S.2d 192 (4th Dep't 1989). Taken together with the medical costs as found in finding of fact 13, *supra,* then, the total damages plaintiff sustained as a result of this collision are $115,880.77.

5). Reducing those damages by plaintiff's negligence which contributed 20% to proximately causing this accident, the Court hereby concludes that plaintiff should recover from defendant United States a total of $92,-704.62 for damages suffered as a result of the collision.

## IV. Conclusion:

Based on the foregoing findings of fact and conclusions of law the Court finds that judgment should be entered for plaintiff Daniel W. Gibbs in the amount of $92,704.62.

**IT IS SO ORDERED.**